[No. C058521. Third Dist. Oct. 13, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE KELLY MUNOZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I.–V. of the Discussion.

**COUNSEL**

Rita Barker, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CANTIL-SAKAUYE, J.**—A jury convicted defendant Jose Kelly Munoz of the attempted murder of James Dowden (Pen. Code,[1] §§ 187, 664—count II),

---

[1] Hereafter, undesignated statutory references are to the Penal Code unless otherwise indicated.

the assault of Luis Magana with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)—count III), and shooting at Magana from a vehicle (§ 12034, subd. (c)—count IV).[2] The jury found that in counts II and IV, defendant personally and intentionally discharged a firearm causing great bodily injury to Magana (§ 12022.53, subd. (d)), and that in count III, defendant inflicted great bodily injury to Magana (§ 12022.7, subd. (a)). The jury found that count II was not willful, deliberate and premeditated. (§ 664, subd. (a).) Defendant was sentenced to state prison for an aggregate 58 years eight months to life, consisting of determinate terms of seven years on count II and one year eight months (one-third the midterm) in count IV, plus two consecutive indeterminate terms of 25 years to life for the firearm enhancements in counts II and IV. Sentence on count III was stayed pursuant to section 654.

On appeal, defendant contends (1) admission of gang evidence was an abuse of discretion; (2) refusal to answer a juror's question prior to jury instructions and deliberations was prejudicial; (3) the foregoing errors were cumulative and require reversal; (4) the omission of jury instructions on a lesser included offense of count IV was erroneous and prejudicial; (5) the sentencing court misunderstood its discretion and failed to exercise its discretion; and (6) the count IV enhancement term of 25 years to life was unauthorized and must be modified. We shall affirm the judgment of conviction and remand for resentencing.

## FACTS

*Prosecution Case-in-chief*

On an evening in August 2007, Dowden and Magana walked to Dowden's grandmother's house in Arbuckle. While they were walking, a car drove up behind them and stopped next to them. Three people were in the car, including defendant, who was seated in the rear passenger seat. Dowden had known defendant for a few years, and Magana is defendant's cousin.

A few months earlier, Dowden had been suspected of beating up a person named Santiago Ochoa. Dowden thought that both Ochoa and defendant were members of the Sureño gang, which Dowden referred to as "Blue," "Blue 13," and "scrap." Ochoa had told Dowden that he was in the gang. Dowden

---

[2] The prosecution dismissed a count of the attempted murder of Magana and related enhancing allegations. (Count I.)

knew that defendant was in the gang because defendant had tattoos and once had asked him, "are you blue?" Dowden became scared when he saw defendant drive up in the car. Defendant had warned Dowden a couple of weeks prior that he knew Dowden had beaten up Ochoa and "[y]ou're going to get yours."

Magana walked up to defendant's window, which was open eight to 10 inches. Dowden stepped back at least five feet so that he was behind and to the side of Magana. Defendant was smirking and appeared to be angry. Dowden saw him holding a .22-caliber sawed-off rifle in his lap. Defendant lifted the rifle, pointed it toward Dowden and Magana, fired, and tossed the rifle to the side. The shot shattered the window. Magana grabbed his chest and started screaming. Defendant told the driver to "take off." The car sped down the road but then stopped and defendant jumped out.

Magana told Dowden to call the police; Dowden ran to his grandmother's house. Defendant told Magana that he was sorry and that Magana "wasn't the one supposed to get hit." He pleaded, "[d]on't call the cops. Say it was somebody else or say it was a drive-by."

Defendant and Magana walked to Magana's house. Magana yelled for someone to call the police even though defendant was telling him not to. Defendant told Magana's mother that he was sorry. She told him to stay if the shooting was an accident. However, Magana's brother told defendant to go away. At that point, defendant ran off.

Eight days after the shooting, defendant turned himself in to the sheriff's department. His leg and foot were injured. He told jail staff that the injuries occurred when he jumped off a bridge.

The parties stipulated that a single shot was fired; the bullet fragmented into two pieces, probably when it struck the window glass; and two bullet fragments entered Magana's body. One fragment lodged in Magana's liver and surgeons could not retrieve it.

*Defense*

Defendant testified that he had been practicing target shooting with his gun. Then he took the gun along with him as he hung out with friends. He

did not want his little brothers to play with the gun. Defendant and his friends were drinking beer and, when it ran out, they drove to a gas station to buy more beer. On the way back, defendant and his friends saw Dowden and Magana walking along the street. After the car stopped, defendant waved Magana over to the car and asked, "What's up?" Defendant picked up the gun to show it to Magana. When he lifted it, the gun got caught on the door handle and accidentally fired. Defendant did not intend to pull the trigger.

After the shooting, the driver started to drive away but defendant told him to stop. Defendant got out of the car and yelled, "[s]omebody call the cops. My cousin just got hurt." Dowden ran off, and defendant walked Magana to his mother's house. Defendant hugged Magana's mother and told her he was sorry and that it was an accident. Magana's mother told him to get away from her, so he tried to explain everything to Magana's brother. The brother warned, " 'Get away from me before I kick your ass,' " so defendant left. He broke his leg jumping off a bridge. A few days later, he contacted an attorney who advised him to turn himself in.

Defendant considered Dowden a friend and had never threatened him. He did not intend to do anything about Ochoa's beating. He did not want to hurt Dowden or anyone else.

Defendant did not know that Ochoa was a Sureño. Defendant claimed that he was not a Sureño, and that his friends in the car were not Sureños, but he admitted he hung around Sureños. He claimed that Dowden and Magana were lying about everything.

*Rebuttal*

Magana's mother testified that defendant apologized to her for shooting her son. She begged him to stay, but he ran off.

A Colusa County Sheriff's deputy testified that he found gang-related items, particularly evidence of Sureño membership, in the bedrooms of the other two people who were in the car with defendant.

## DISCUSSION*

### I.–V.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VI.

Defendant contends the 25-year-to-life enhancement on count IV constitutes an unauthorized sentence and must be modified. Specifically, because a consecutive term was imposed on count IV, he argues the minimum parole eligibility period must be limited to one-third of that otherwise imposed, or eight years four months to life. We consider this issue for guidance in the event that the trial court elects in its discretion to reimpose a consecutive term on count IV.

Section 12022.53, subdivision (d), provides in relevant part, "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in . . . subdivision (c) . . . of Section 12034, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7 . . . to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

Defendant relies on *People v. Moody* (2002) 96 Cal.App.4th 987 [117 Cal.Rptr.2d 527] (*Moody*), in which this court considered an identical contention with respect to a *determinate 10-year enhancement* imposed pursuant to subdivision (b) of section 12022.53. Because the enhancement provided a determinate term, section 1170.1, subdivision (a), reduced the consecutive enhancement to one-third of the statutory 10-year period. (96 Cal.App.4th at pp. 992–994.)

■ However, "sentences of some number of years to life are indeterminate sentences not subject to the [Determinate Sentencing Act]." (*People v. Felix* (2000) 22 Cal.4th 651, 659 [94 Cal.Rptr.2d 54, 995 P.2d 186].) Thus, unlike the 10-year enhancement in section 12022.53, subdivision (b), the 25-year-to-life enhancement in section 12022.53, subdivision (d), is not subject to reduction pursuant to section 1170.1, subdivision (a) and *Moody, supra,* 96 Cal.App.4th 987. ■ If the trial court elects in its discretion to impose a consecutive term on count IV, the corresponding enhancement is 25 years to life.

---

*See footnote, *ante*, page 468.

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Sims, Acting P. J., and Raye, J., concurred.

On November 6, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 21, 2010, S178139.